**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| THE WIMBLEDON FUND, SPC (CLASS TT), § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | |
| DAVID BERGSTEIN, JEROME SWARTZ, § | Civil Action No. 4:15-cv-02193 |
| AARON GRUNFELD, and KIARASH K. JAM, § | |
| § | |
| Defendants. § | |

### RESPONSE TO JEROME SWARTZ'S MOTIONS TO DISMISS

**COLE SCHOTZ P.C.**

By:/s/ James W. Walker
James W. Walker (Lead Attorney)
(S.D. Fed Bar No. 13776)
(TX Bar No. 20709600)
Email: jwalker@coleschotz.com
Justin S. Levy (Attorney to be Noticed)
(S.D. Fed Bar No. 1373395)
(TX Bar No. 24078852)
Email: jlevy@coleschotz.com
2515 McKinney Ave., Suite 1350
Dallas, TX 75201
Telephone: (469) 557-9390
Facsimile: (469) 553-0361
Leo V. Leyva (Attorney to be Noticed)
E-mail: lleyva@coleschotz.com
James T. Kim (Attorney to be Noticed)
E-mail: jkim@coleschotz.com
900 Third Avenue
New York, NY 10022-1906
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
**ATTORNEYS FOR PLAINTIFF THE
WIMBLEDON FUND, SPC, (CLASS TT)**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2 | |
| II. | SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 | |
| III. | NATURE AND STAGE OF PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 | |
| IV. | STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 | |
| V. | ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 | |
| | A. The Court Has Personal Jurisdiction Over Swartz . . . . . . . . . . . . . . . . . . . . . 7 | |
| | | i. *For jurisdictional purposes, Swartz is the alter ego of SIP* . . . . . . . . . . 7 |
| | | ii. *Jurisdictional veil-piercing is further supported by the Fund's allegations and evidence of fraud* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 |
| | B. Venue In The Southern District Of Texas Is Proper . . . . . . . . . . . . . . . . . . 13 | |
| | | i. *For venue purposes, Swartz is the alter ego of SIP* . . . . . . . . . . . . . . . 13 |
| | C. Alternatively, The Court Should Defer Its Jurisdictional And Venue Rulings Because The Jurisdictional and Venue Veil-Piercing Issues Are Intertwined With The Fund's Substantive Veil-Piercing Claim . . . . . . . . . . . . . . . . . . . . 13 | |
| | D. The Fund Has Sufficiently Pled Its Veil Piercing Claim . . . . . . . . . . . . . . . . 15 | |
| VI. | CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17 | |

# I.
# TABLE OF AUTHORITIES

**CASES**

-*Licea v. Curacao Drydock Co., Inc.*, Nos. 14-20619, 14-20693, 2015 WL 7445504 (5th Cir. Nov. 23, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11
-*Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235 (5th Cir. 2008) . . . 6, 14
-*Montez v. Dep't of Navy*, 392 F.3d 147 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
-*Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir. 2000) . . . . . . . . . . . . . . . . 6, 7, 9, 11
-*Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
-*Minn. Mining & Mfg. Co. v. Eco-Chem, Inc.*, 757 F.2d 1256 (Fed. Cir. 1985) . . . . . . . . . . . . . . 6
-*Ronaldo Designer Jewelry, Inc. v. Anne Ryan, LLC*, 74 F. Supp. 3d 783 (S.D. Miss. 2015) . . . .7
-*ACS Partners, LLC v. GFI Mgmt. Servs., Inc.*, No. H-15-1111, 2015 WL 9319235 (S.D. Tex. Dec. 23, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14
-*Fiduciary Network, LLC v. Buehler*, No. 3:15-cv-0808, 2015 WL 2165953 (N.D. Tex. May 8, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
-*Casares v. Agri-Placements Int'l, Inc.*, 12 F. Supp. 3d 956 (S.D. Tex. 2014) . . . . . . . . . . . . . . 12
-*Evergreen Media Holdings, LLC v. Safran Co.*, 68 F.Supp. 3d 664 (S.D. Tex. 2014) . . . . . . . 14
-*In re Hot-Hed*, NO. H-11-35208-H3-7, Adv. No. 13-3107, 2014 WL 2919340 (Bankr. S.D. Tex. June 26, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15
-*Weston Group, Inc. v. Sw. Home Health Care, LP*, 3:12-CV-1964-G, 2014 WL 940329 (N.D. Tex. Mar. 11, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 15,16
-*Clemons v. WPRJ, LLC*, 928 F. Supp. 2d 885, 897 (S.D. Tex. 2013) . . . . . . . . . . . . . . . . . . . . .13
-*Bhatia v. Dischino*, No. 3:09-cv-1086-B, 2011 WL 3820825 (N.D. Tex. Aug. 29, 2011) . . . . 16
-*Lincoln Gen'l Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, No. 3:07-CV-1985-B, 2009 WL 1174641 (N.D. Tex. Apr. 29, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
-*The Richards Group, Inc. v. Brock*, No. 3:06-CV-0799-D, 2007 WL 700896 (N.D. Tex. Mar. 7, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
-*PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163 (Tex. 2007) . . . . . . . . 7, 8, 11, 12
-*Crithfield v. Boothe*, 343 S.W.3d 274 (Tex. App.—Dallas 2011, no pet.) . . . . . . . . . . . . . . 8, 11
-*Latham v. Burgher*, 320 S.W.3d 602 (Tex. App.—Dallas 2010, no pet.) . . . . . . . . . . . . . . . . . 16
-*Joiner v. Coast Paper & Supply*, No. 13-07-00623-CV, 2008 WL 2895851 (Tex. App.—Corpus Christi 2008, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**STATUTES AND RULES**
-Tex. Bus. Orgs. Code § 21.233 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
-Fed. R. Civ. P. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16
-Fed. R. Civ. P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 14, 15
-Fed. R. Civ. P. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Plaintiff The Wimbledon Fund, SPC (Class TT) (the "Fund") files this Response to Defendant Jerome Swartz's ("Swartz's") Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim (Doc. No. 31) (the "Motions") and would respectfully show the Court as follows:

## II.
## SUMMARY OF ARGUMENT

The Fund asserts a single claim for declaratory relief against the four alleged alter egos (Defendants) of a sham Texas entity (Swartz IP Services Group Inc. a/k/a Advisory IP Services Inc. (collectively, "SIP")) against whom the Fund obtained a breach-of-contract judgment for more than $23 million. In pertinent part, the Fund alleges that SIP conducted no legitimate business, SIP had no independent assets, SIP failed to observe corporate formalities, Defendants formed SIP for the sole purpose of shielding them from personal liability arising out of a fraudulent investment scheme, and Defendants permitted SIP's Certificate of Formation to be forfeited shortly after dissipating the Fund's $17.7 million investments.

The crux of Swartz's Rule 12(b)(2) and (3) motions is whether the Fund has satisfied its prima facie burdens of jurisdictional and venue veil-piercing. As explained in its response to the previously filed Rule 12 motions (Doc. No. 17), federal courts regularly attribute a Texas entity's jurisdictional and venue contacts to the entity's non-resident alter ego(s). With respect to Swartz, jurisdictional and veil-piercing is appropriate because Swartz is one of SIP's two shareholders, he is the individual who lent his name to the sham entity (*Swartz* IP . . . ), and strangers to SIP, like the Fund, were led to believe that he had an active role in SIP and provided financial support to same.

Like the other Defendants, in support of the Motions, Swartz filed a declaration averring that he is not a resident of Texas and has never done business in the state. Unlike the other Defendants, Swartz further avers that he had no involvement with SIP.

Swartz's declaration fails to rebut material allegations in the Amended Complaint (Doc. No. 40) (filed pursuant to Rule 15(a)(1)(B)), and the Fund's evidence attached to this response places Swartz's testimony in dispute. Therefore, the Fund has satisfied its prima facie burden to prove personal jurisdiction and venue at this initial stage in the litigation. The Court should deny Swartz's Rule 12(b)(2) and (3) motions.

Alternatively, the Fund respectfully requests that the Court defer its ruling on Swartz's Rule 12(b)(2) and (3) motions. When disputed jurisdictional and venue facts are intertwined with the merits of a claim, as they are here, the jurisdictional and venue determination should be made at trial, or at the very least after a pretrial evidentiary hearing confined to those issues. Along these lines, the Fund intends to file a concurrent motion for jurisdictional discovery, and the Court should allow the Fund to complete the requested discovery before the Court weighs disputed jurisdictional facts.

Finally, in addition to his Rule 12(b)(2) and (3) motions, Swartz also challenges the sufficiency of the Fund's factual allegations, contending that the Complaint fails to satisfy Rule 9(b)'s particularity requirements. Assuming *arguendo* that the heightened pleading standard is applicable, which the Fund disputes, the Amended Complaint contains sufficient allegations regarding the nature of Swartz's relationship to SIP's fraudulent investment scheme. The Court should deny the Motions in their entirety.

## III.
## NATURE AND STAGE OF PROCEEDING

As referenced above, on September 21, 2015, Defendants David Bergstein ("Bergstein"), Kiarash Jam ("Jam"), and Aaron Grunfeld ("Grunfeld") timely filed Rule 12 motions (Doc No. 17) contesting jurisdiction and venue. Those motions are fully briefed and have not been formally ruled upon.

On October 27, 2015, the parties filed their Rule 26(f) Joint Discovery/Case Management Plan (Doc. No. 25). The Rule 16 scheduling conference was held on November 6, 2015, and the Court entered the Scheduling Order (Doc. No. 26) on the same date. This case is set for trial during the month of December 2016.

Swartz's deadline to respond to the Complaint was extended pursuant to several agreements (Doc Nos. 16, 28-30). On December 30, 2015, Swartz timely filed the Motions. In response to the Motions, the Fund is filing: (i) the Amended Complaint (Doc. No. 40); (ii) this response; and (iii) a motion for jurisdictional discovery.

The Fund served its initial disclosures, including all non-privileged, relevant documents within its possession, custody, or control in November 2015. As of the date of this filing, no Defendant has served its initial disclosures. Defendants Bergstein, Jam, and Grunfeld have refused to serve their initial disclosures until after the Court rules on their motions to dismiss.

In December 2015, the Fund served each Defendant with a distinct set of combined written discovery, and in January 2015, the Fund served a subpoena *duces tecum* and *ad testificandum* on SIP. As of the date of this filing, no substantive responses have been provided to these discovery requests.

# IV.
# STATEMENT OF THE ISSUES

(1) Whether the Fund, through unrebutted well-pled allegations and disputed facts, has established a prima facie case of jurisdictional veil-piercing. *See Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). [S*ee also* Resp. Mot. Dismiss, Doc. No. 23, 7-8 & n.2, 12 n.16 (citing authority)].

(2) For similar reasons, whether the Fund has established a prima facie case of venue veil-piercing. *See Minn. Mining & Mfg. Co. v. Eco-Chem, Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985).

(3) Alternatively, whether the Court should defer its jurisdiction and venue rulings because disputed material facts are intertwined with the merits. *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241-42 (5th Cir. 2008).

(4) Whether the Fund's detailed factual allegations satisfy the applicable pleading standard for its substantive veil-piercing claim. *See, e.g.*, *In re Hot-Hed*, NO. H-11-35208-H3-7, Adv. No. 13-3107, 2014 WL 2919340, at *5 (Bankr. S.D. Tex. June 26, 2014); *Weston Group, Inc. v. Sw. Home Health Care, LP*, 3:12-CV-1964-G, 2014 WL 940329, at *2 (N.D. Tex. Mar. 11, 2014).

## V.
## ARGUMENT

A. **The Court Has Personal Jurisdiction Over Swartz.**

At the current juncture of the lawsuit, the Fund need only make a prima facie case supporting jurisdiction. *Alpine View Co.*, 205 F.3d at 215. The Court must accept as true all uncontroverted allegations and resolve all factual conflicts in the Fund's favor. *Id.*

  i.  *For jurisdictional purposes, Swartz is the alter ego of SIP.*

As previously briefed, federal courts have regularly attributed a Texas entity's jurisdictional contacts to the entity's alter ego(s). [Resp. Mots. Dismiss, Doc. No. 23, 7-8 & n.2, 12 n.6 (citing authority)].[1] These courts considered an array of factors in the veil-piercing analysis. [Resp. Mots. Dismiss at 8 n.3 (citing authority)]. The factors are not static and may be reformulated based on the facts of each case. *Ronaldo Designer Jewelry, Inc. v. Anne Ryan, LLC*, 74 F. Supp. 3d 783, 789-90 (S.D. Miss. 2015) (citations omitted).

In a recent opinion, the Fifth Circuit for the United States Court of Appeals clarified that "jurisdictional veil-piercing and substantive veil-piercing involve different elements of proof given that jurisdiction implicates due process considerations that cannot be overridden by statutes or common law." *Licea v. Curacao Drydock Co., Inc.*, Nos. 14-20619, 14-20693, 2015 WL 7445504, at *3 (5th Cir. Nov. 23, 2015) (quoting *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174-75 (Tex. 2007)). The Supreme Court of Texas explained this jurisdictional standard as follows:

> To fuse the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary. But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship;

---

[1] In the interests of brevity, the Fund incorporates by reference the entirety of its response (Doc. No. 23) to the previously filed Rule 12 motions.

> ***the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud and injustice.***

*PHC-Minden, L.P.*, 235 S.W.3d at 175 (citations and quotations omitted) (emphasis added). "There must be a plus factor, something beyond the subsidiary's mere presence within the bosom of the corporate family." *Licea*, 2015 WL 7445504, at *4 (citing *PHC-Minden, L.P.*, 235 S.W.3d at 176). Relevant factors include:

- the amount of the subsidiary's stock owned by the parent corporation;
- the existence of separate headquarters;
- the observance of corporate formalities;
- the degree of the parent's control over the general policy and administration of the subsidiary;[2]
- the payment of alleged corporate debts with personal checks or other commingling of funds;
- representations the individual will financially back the corporation;
- the diversion of company profits to the individual for his personal use;
- inadequate capitalization; and
- other failure to keep corporate and personal assets separate.[3]

"A court may appropriately modify the factors to determine whether a corporation is the alter ego of an individual." *The Richards Group, Inc. v. Brock*, No. 3:06-CV-0799-D, 2007 WL 700896, at *3 (N.D. Tex. Mar. 7, 2007) (citation omitted).

Nearly all of the above factors are addressed in the Amended Complaint as follows:

- SIP did not have any legitimate business activities, [Am. Compl., ¶ 11];
- SIP had no independent assets separate from those of Defendants, [Am. Compl., ¶ 12];
- SIP was controlled entirely by Defendants, [Am. Compl., ¶¶ 12, 14];
- SIP failed to observe corporate formalities, [Am. Compl., ¶ 12];
- SIP's financial obligations were funded on an as-needed basis by Defendants, [Am. Compl., ¶¶ 12, 13];
- The Fund's fraudulently obtained investments were dissipated to Defendants and entities controlled by and/or operated for Defendants' benefit, [Am. Compl., ¶¶ 13, 19-35, 57];
- SIP routinely failed to pay its debts, [Am. Compl., ¶¶ 14, 38, 58-59];

---

[2] *Licea*, 2015 WL 7445504, at *4 (citations and quotations omitted).
[3] *ACS Partners, LLC v. GFI Mgmt. Servs., Inc.*, No. H-15-1111, 2015 WL 9319235, at *2 (S.D. Tex. Dec. 23, 2015) (quoting *Nichols v. Tseng Hsiang Lin*, 282 S.W.3d 743, 747 (Tex. App.—Dallas 2009, no pet.)); accord *Crithfield v. Boothe*, 343 S.W.3d 274, 285 (Tex. App.—Dallas 2011, no pet.) (citing *Nichols*).

- Swartz was one of SIP's two shareholders, [Am. Compl., ¶¶ 42, 52, 55];
- Strangers to SIP, like the Fund, were led to believe that Swartz provided financial support to SIP and that he had an active role in the entity, [Am. Compl., ¶¶ 51, 54, 55, 58-60]; and
- Swartz received a $100,000 payment because of his role in SIP, [Am. Compl., ¶ 57].

For his part, Swartz does not rebut the Fund's allegations regarding SIP's business activities, assets, and corporate formalities. [*See* Swartz Decl., Doc. No. 31-1]. Therefore, the Court must accept these allegations as true in its jurisdictional analysis.[4] *Alpine View Co.*, 205 F.3d at 215.

Swartz simply attempts to distance himself from SIP by averring that:

- Bergstein has a history of approaching Swartz and Swartz's accountant James King with investment opportunities because Swartz is a family friend;
- Swartz retired from active business affairs in 2008;
- In November 2010, Bergstein approached Swartz about forming a jointly owned company, but Swartz was not interested in Bergstein's proposal;
- In November 2011, after learning of SIP, Swartz and his accountant instructed Bergstein to remove Swartz's name;
- Swartz has no management or financial relationship with SIP; and
- Swartz never discussed SIP with the Fund's investment manager ("Weston").[5]

[Swartz Decl., ¶¶ 11-16].

As an initial matter, Swartz's testimony that he "retired from active business affairs" in 2008 is misleading. [*See* Swartz Decl., ¶ 12]. Swartz does not dispute that he met with Weston on at least two occasions in 2011 near the date of the Fund's initial investment in SIP, [*see* Swartz Decl., ¶ 16], as alleged in paragraphs 50 and 54 of the Amended Complaint, and Swartz

---

[4] Out of an abundance of caution, the Fund proffers SIP's Deutsche Bank and Wells Fargo records as evidence of SIP's inadequate capitalization. SIP's Deutsche Bank account ending in -122 had a negative $2.9 million balance the month after it opened. [Ex. S at WF472]. One month later, it had a negative $8.2 million balance. [Ex. T at WF477]. SIP's Deutsche Bank account ending in -080 received approximately $8 million of the Fund's investment the month it opened, and by the end of the month, all but $654,431.07 had been withdrawn. [Ex. U at WF679]. The account ending in -080 was entirely depleted by June 2012. [Ex. V at WF672]. In December 2011, $5.2 million of the Fund's investment was deposited in SIP's Wells Fargo account, which was opened two days before the deposit, and by the end of that month, all but $67,875.00 had been withdrawn from or transferred out of the account. [Ex. W at WF1088-89].

[5] As defined in Paragraph 10 of the Amended Complaint.

judicially admits that in June 2012 he was appointed to the four-member advisory board of an entity that allegedly received fraudulent transfers of the Fund's investments in SIP, [Mots. at 8 & n.20]. Additionally, during the time period relevant to this lawsuit, Swartz was sent or referred to in communications as if he had active business affairs. [Ex. A at WF83; Ex. B at WF1242; Ex. C at WF1239; Ex. D at WF1259-60; Ex. E at WF1263-64; Ex. F at WF1412; Ex. G at WF1423; Ex. H at WF1427; Ex. I at WF1599; Ex. J at WF1601]. In fact, as late as March and April 2012, Weston was sending documents to Swartz and Swartz's accountant regarding the Fund. [Exs. A, B]. These last communications are inconsistent with Swartz's testimony that he requested that SIP be renamed in November 2011. [Swartz Decl., ¶ 11], but support an inference that he was involved with the entity through its rebranding as Advisory IP Services Inc. in June 2012, [Ex. K at WF1922].

Moreover, despite Swartz's testimony to the contrary, [*see* Swartz Decl., ¶ 15], the documentary evidence demonstrates that Swartz was identified as one of SIP's two shareholders. When SIP's Deutsche Bank accounts were opened shortly before the Fund's initial investment, attached to the account authorization forms were SIP board resolutions identifying Swartz as a shareholder. [Ex. L at WF317, WF334-38; Ex. M at WF851, WF867-72]. Likewise, in a March 2012 e-mail, Bergstein represented to Weston that Swartz invested in SIP. [Ex. N at WF1399].

Along these lines, strangers to SIP believed that Swartz had an active role in the entity of the same name and that he provided financial support to and was generally backing the entity. In November 2011, Swartz and Weston met to discuss a potential investment in an entity referred to as ClearSky. [Ex. F at WF1412; Ex. G at WF1423; Ex. H at WF1427-28]. After the investment was made, ClearSky believed that Swartz, through SIP, made the investment. [Ex. O at WF1621-22]. When ClearSky made a capital call pursuant to the investment, it looked to Swartz

for payment. [Ex. C at WF1239-40; Ex. D at WF1259-61; E at WF1263-64; Ex. O at WF1621-22]. A similar scenario occurred in September 2013 when Broadway 4D Theaters, LLC informed its preferred investors that SIP would default on a $15 million credit line because Swartz was ill and could not guarantee payment. [Ex. P at WF1615]. Like ClearSky and Broadway 4D Theaters, LLC, the Fund believed that SIP was a legitimate business enterprise because of Swartz's active involvement and financial support. [*See* Kelty Decl., Ex. X, ¶¶ 5-6].

In sum, the Court should deny Swartz's Rule 12(b)(2) motion because he has failed to rebut material, well-pled allegations and because the remaining factual conflicts must be resolved in favor of the Fund. *See Alpine View Co.*, 205 F.3d at 215.

> ii. *Jurisdictional veil-piercing is further supported by the Fund's allegations and evidence of fraud.*

Although some courts have noted that allegations of fraud are not relevant to the jurisdictional veil-piercing analysis,[6] none of those courts considered allegations, like those in the Amended Complaint, that alter egos formed and used a sham Texas entity for the sole purpose of perpetuating a fraud.[7] Moreover, the Court's consideration of the fraud allegations (and evidence) at issue here would be consistent with two principles articulated by the Fifth Circuit: (i) "[t]he alter ego test for attribution of contacts, i.e., personal jurisdiction, is *less stringent* than that for liability";[8] and (2) "for jurisdiction to exist, there need not be both the existence of a mere shell corporation and fraud. Rather, *either factor, a shell corporation or fraud is sufficient* by itself to justify jurisdiction." *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.

---

[6] Proof of "actual fraud" is required for substantive veil-piercing. [*See* Resp. Mot. Dismiss at 9 (citing authority)].
[7] *See, e.g.*, *Licea*, 2015 WL 7445504, at *4-5 (dismissing owners and operators of shipping vessels); *PHC-Minden, L.P.*, 235 S.W.3d at 175-77 (dismissing owner and operator of hospital); *Crithfield*, 343 S.W.3d at 284-85 (reversing alter-ego finding for individual owner of entity owning oil and gas royalties but affirming personal jurisdiction based on individual's representations that royalty interests were located and managed in Texas); *Joiner v. Coast Paper & Supply*, No. 13-07-00623-CV, 2008 WL 2895851, at *6-8 (Tex. App.—Corpus Christi 2008, no pet.) (not designated for publication) (dismissing officer who provided unrefuted affidavit testimony of entities' legitimate business purposes and activities).
[8] Again, under Texas law, proof of actual fraud is required for substantive veil-piercing.

12 (5th Cir. 1987) (citations omitted) (emphasis added).[9] Indeed, the very purpose of veil-piercing is "to prevent *fraud* and injustice," and here, fraud is one of the "plus factor[s]" that justifies piercing SIP's veil. *See PHC-Minden, L.P.*, 235 S.W.3d at 175-76 (emphasis added).

Accordingly, in addition to the above-referenced allegations, some of which also relate to SIP's fraudulent investment scheme, the Court should consider these additional, unrebutted allegations of fraud:

- In or around November 2010, Bergstein and Swartz discussed forming an entity with many of the same qualities as SIP, which was formed in December 2010, [Am. Compl., ¶¶ 11, 49];
- The above-referenced entity that became SIP was named after Swartz to avoid conflict with Bergstein's pre-existing creditors, [Am. Compl., ¶ 49];
- The entity was also formed in Texas to avoid conflict with Bergstein's creditors, [Am. Compl., ¶ 49];
- Bergstein sent Swartz drafts of the "investment" vehicles (the NPA and the SIP Notes, as defined in Paragraph 16 of the Amended Complaint) for Swartz's signature as SIP's vice president, [Am. Compl., ¶ 53];
- Bergstein also sent Swartz a draft letter under which Swartz would represent and warrant to Weston that at least $5 million of the Fund's $12.5 million initial investment would remain in SIP's Deutsche Bank account, [Am. Compl., ¶ 53];
- The NPA, the SIP Notes, and the letter to Weston contained numerous misrepresentations and created the impression that the SIP Notes were a legitimate investment, [Am. Compl., ¶¶ 17, 62]; and
- Shortly after the Fund's $17.7 million investments were entirely dissipated, SIP changed its name, [Am. Compl., ¶¶ 19, 30, 47], and eventually permitted its Certificate of Formation to be forfeited, [Am. Compl., ¶ 39].

Out of an abundance of caution, the evidence supporting these allegations is attached to this response. [NPA & SIP Notes, Ex. Q at WF1950, WF1969, WF1973-74; Nov. 17, 2011 Corr. to Weston, Ex. R at WF290-291; Bank Records, Exs. S, T, U, V, W; Certs. of Am. & Forfeiture, Ex. K at WF1922-25]. These unrebutted allegations and evidence further support the Court's exercise of personal jurisdiction over Swartz.

---

[9] For similar reasons, Defendants could not rely on the fiduciary-shield doctrine because their corporate actions were motivated solely by personal interests. *See Casares v. Agri-Placements Int'l, Inc.*, 12 F. Supp. 3d 956, 969 (S.D. Tex. 2014) (citations and quotations omitted).

**B.      Venue Is Proper In Southern District Of Texas.**

The Fund need only make a prima facie case of venue at this initial stage of the lawsuit. *See Clemons v. WPRJ, LLC*, 928 F. Supp. 2d 885, 897 (S.D. Tex. 2013) (citations omitted). "[T]he Court must accept as true all the allegations in the complaint and resolve all factual conflicts in favor of plaintiff." *Id.* (citations omitted).

   *i.      For venue purposes, Swartz is the alter ego of SIP.*

The Fund previously briefed venue veil-piercing in its response to Defendants Bergstein, Jam, and Grunfeld's Rule 12(b)(3) motion, [*see* Resp. Mots. Dismiss, Doc. No. 23, at 12-14], and Swartz simply adopts the other Defendants' arguments in the Motions, [*see* Mots. at 4]. For the reasons previously articulated, and for those stated above, the Fund has made a prima facie case of venue veil-piercing against Swartz. *See id.*

**C.      Alternatively, The Court Should Defer Its Jurisdictional And Venue Rulings Because The Jurisdictional And Venue Veil-Piercing Issues Are Intertwined With The Fund's Substantive Veil-Piercing Claim.**

As explained below, the Court may defer its jurisdictional and venue rulings because the jurisdictional and venue issues are intertwined with the merits of the Fund's sole claim for a declaration substantively piercing SIP's corporate veil.

The Fifth Circuit has been quoted as follows on the intertwinement issue:

> Ultimately, the plaintiff must show by a preponderance of the evidence that jurisdiction is proper. Often, the determination of whether this standard is met is resolved at trial along with the merits. This is especially likely when the jurisdiction issue is intertwined with the merits and therefore can be determined based on jury fact findings. In this situation it is often preferable that the jurisdictional determination be made at trial, where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits. But this court has said that after a pretrial evidentiary hearing confined to the jurisdictional issue, where both sides have the opportunity to present their cases fully, the district court can decide whether the plaintiff has established jurisdiction by a preponderance of the evidence.

> If the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss. Any greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavit and supporting materials.

*Evergreen Media Holdings, LLC v. Safran Co.*, 68 F.Supp. 3d 664, 671 n.4 (S.D. Tex. 2014) (quoting *Walk Haydel & Assocs., Inc.*, 517 F.3d at 241-42); *accord See Montez v. Dep't of Navy*, 392 F.3d 147, 150, 151 (5th Cir. 2004) (reversing dismissal and remanding because of intertwinement).

There is significant intertwinement between the factors for "procedural" and substantive veil-piercing. [*See* Resp. Mot. Dismiss at 8 & n.3, 9 (citing authority and quoting factors)]. Both standards focus on the extent of the relationship between the entity and the alleged alter ego and on the entity's legitimate business activities and assets.

Courts frequently grant jurisdictional discovery in alter-ego cases. *See, e.g.*, *ACS Partners, LLC*, 2015 WL 9319235, at *1; *Fiduciary Network, LLC v. Buehler*, No. 3:15-cv-0808, 2015 WL 2165953, at *10 (N.D. Tex. May 8, 2015). The Fund intends to file such a motion in this lawsuit. For the purposes of this response, the Fund simply reiterates that no Defendant has provided substantive discovery to the Fund in this lawsuit and that SIP provided no discovery to the Fund in the underlying breach-of-contract lawsuit between the parties. The evidence attached to this response was obtained from third parties and the Fund's independent investigation.

Accordingly, to the extent that the Court does not deny Swartz's Rule 12(b)(2) and (3) motions, the Fund respectfully requests that the Court defer its ruling until trial, or at the earliest, after a full evidentiary hearing following the completion of jurisdictional discovery. *See id.*

### D. The Fund Has Sufficiently Pled Its Veil-Piercing Claim.

Finally, pursuant to Rules 9(b) and 12(b)(6), Swartz contends that he should be dismissed from the lawsuit because Swartz failed to plead his veil-piercing claim with particularity. [Mots. at 8-10]. In response to this contention, the Fund timely filed the Amended Complaint, pursuant to Rule 15(a)(1)(B), and argues that: (i) the heightened pleading standard is inapplicable; and (ii) the allegations in the Amended Complaint are sufficient, regardless of the applicable pleading standard.

First, "[t]here is a split of authority with respect to the interpretation of the pleading requirements of Section 21.223 [(under which "actual fraud" is required to pierce the corporate veil for contractual liability)]." *In re Hot-Hed*, 2014 WL 2919340, at *5 (finding sufficient allegations but not identifying the applicable pleading standard). In *Weston Group, Inc. v. Southwest Home Health Care, LP*, the district court refused to apply the heightened pleading standard to a veil-piercing claim as follows:

> Although the language of Rule 9(b) confines its requirements to claims of fraud, the requirements of the rule apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud. However, as will be discussed below, the requirements for showing actual fraud are less burdensome than those for establishing fraud. Since actual fraud requires showing 'dishonesty of purpose or intent to deceive,' establishing actual fraud is controlled by 9(b)'s guideline that 'malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.' Therefore, the plaintiff's complaint will be evaluated under Rule 12(b)(6), not Rule 9(b).

*Weston Group, Inc.*, 2014 WL 940329, at *2 (citations and quotations omitted) (denying motion to dismiss veil-piercing claim).

In the Motions, Swartz cites no legal authority, except for Rule 9(b), in support of his conclusion that Rule 9(b)'s heightened pleading standard is applicable. [*See* Mots. at 5, 8-10].

Likewise, Swartz makes no effort to analyze the above-referenced split of authority. [*See* Mots. at 5, 8-10].

As explained in *Weston Group, Inc.*, and as Swartz concedes, [*see* Mots. at 9], "actual fraud" in the veil piercing context requires less stringent proof than the tort of common law fraud. *See also Latham v. Burgher*, 320 S.W.3d 602, 607 (Tex. App.—Dallas 2010, no pet.). Therefore, the heightened pleading standard should not apply to the Fund's claim.

Second, even if the Amended Complaint were subject to Rule 9(b), the Fund's allegations satisfy that pleading standard. *See, e.g.*, *In re Hot-Hed*, 2014 WL 2919340, at *5; *Weston Group, Inc.*, 2014 WL 940329, at *5; *see also Lincoln Gen'l Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, No. 3:07-CV-1985-B, 2009 WL 1174641, at *6-8 (N.D. Tex. Apr. 29, 2009) (denying motion to dismiss veil-piercing claims and applying Rule 9(b)).

Rule 9(b)'s requirements would be relaxed here because the facts relating to SIP's fraudulent investment scheme are within the exclusive knowledge of Defendants and their agents. *See Lincoln Gen'l Ins. Co.*, 2009 WL1174641, at *6 (citing *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). Likewise, the Fund's allegations of fraud may be pled on information and belief, *see id.* (citations omitted), and as here, "[m]ultiple defendants' conduct may be lumped together if the plaintiff's allegations elsewhere designate the nature of the defendants' relationship to a particular scheme and identify the defendants' role," *see Bhatia v. Dischino*, No. 3:09-cv-1086-B, 2011 WL 3820825, at *12 (N.D. Tex. Aug. 29, 2011) (citation omitted).

In light of these principles, the Amended Complaint contains numerous allegations regarding the who, what, when, where, why, and how of SIP's fraudulent investment scheme and

Swartz's role in same. The majority of these allegations are referenced above. To briefly reiterate the specific allegations regarding Swartz's role in the scheme:

- In November 2010, Swartz and Bergstein discussed forming a Texas entity together shortly before one (SIP) was creating bearing Swartz's name, [Am. Compl., ¶ 49];
- In November 2011, Swartz received the NPA and the SIP Notes before they were executed, [Am. Compl., ¶ 53];
- Swartz received materials regarding the Fund as late as March and April 2012, [Am. Compl., ¶ 56];
- SIP's name was changed to eliminate reference to Swartz soon after the Fund's investments were entirely dissipated, [Am. Compl., ¶¶ 19, 30, 47];
- Swartz received a direct payment from Bergstein while the Fund's investments were being dissipated, [Am. Compl., ¶ 57];
- An entity on which Swartz serves on the advisory board received a fraudulent transfer of the Fund's investment, [Am. Compl., ¶ 23]; and
- SIP's bank records indicate that there were also "withdrawals in branch," [Am. Compl., ¶ 34], and Swartz was one of SIP's two shareholders, [Am. Compl., ¶¶ 42, 52, 55].

The Court should deny Swartz's motion to dismiss for failure to state a claim upon which relief can be granted.

## VI. CONCLUSION

For the reasons stated above, the Fund respectfully requests that the Court deny the Motions in their entirety. Through its unrebutted allegations and the disputed jurisdictional and venue facts, the Fund has satisfied its prima facie burden of jurisdictional and venue veil-piercing. Likewise, the allegations in the Amended Complaint sufficiently describe Swartz's role in SIP's fraudulent investment scheme, regardless of the applicable pleading standard.

Alternatively, the Fund respectfully requests that the Court defer its jurisdictional and venue rulings until trial, or at the earliest, a pretrial evidentiary hearing confined to those issues.

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on this 14th day of January 2016, with a copy of this document via the Court's CM/ECF system pursuant to the Federal Rules of Civil Procedure and the Local Rules for the Southern District of Texas.

/s/ James W. Walker
James W. Walker