UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

STAYED
"O"

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-6633-CAS(AJWx); C/W: CV16-2287-CAS(AJWx) | Date | January 9, 2017 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) v. GRAYBOX , LLC, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Ingrid Valdes | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| James Walker | Patricia Glaser; Richard Buckner; Kevin Scott; Paul Levine; Karen Sassounian; Nancy Fong |

**Proceedings:** DEFENDANTS GRAYBOX, LLC AND DAVID BERGSTEIN'S MOTION TO STAY ACTION PENDING RESOLUTION OF RELATED CRIMINAL ACTION (Dkt. 286, filed December 7, 2016)

## I.   INTRODUCTION

On July 30, 2015, the Wimbledon Fund, SPC (Class TT) ("Wimbledon") filed an action in the United States District Court for the Southern District of Texas against defendants David Bergstein, Jerome Swartz, Aaron Grunfeld, and Kiarash Jam (collectively, "defendants"). ("Alter Ego Action"). The Wimbledon Fund, SPC (Class TT) v. Bergstein, No. 2:16-cv-2287-CAS-AJW, dkt. 40. In brief, Wimbledon alleges that it was the victim of a fraudulent investment scheme involving an investment advisory company named Swartz IP Services Group ("SIP"). Wimbledon asserts that in November and December 2011, it invested $17.7 million dollars with SIP pursuant to a note purchase agreement, but that subsequently SIP caused this investment to be transferred to various third parties, including defendants, in violation of the California Uniform Fraudulent Transfer Act ("CUFTA"). In the Alter Ego Action, Wimbledon seeks a declaratory judgment that defendants Bergstein, Swartz, Grunfeld, and Jam are jointly and severally liable for SIP's liability arising out of or under its note purchase agreement with Wimbledon, under the alter ego or "sham to perpetrate fraud" doctrines.

On August 28, 2015, Wimbledon filed an action in this Court against defendants Graybox, LLC. ("Graybox"), Integrated Administration ("IA"), Eugene Scher, as trustee

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

STAYED
"O"

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-6633-CAS(AJWx); C/W: CV16-2287-CAS(AJWx) | Date | January 9, 2017 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) v. GRAYBOX , LLC, ET AL. | | |

of the Bergstein Trust, and Cascade Technologies, Corp. ("Fraudulent Transfer Action"). The Wimbledon Fund, SPC (Class TT) v. Bergstein, No. 2:15-cv-06633-CAS-AJW, Dkt. 1, ("Fraudulent Transfer Compl.").[1]

On April 1, 2016, the Alter Ego Action was transferred to this Court. Alter Ego Action, Dkt. 64. Thereafter, on May 10, 2016, the Court granted Wimbledon's unopposed motion to consolidate the Fraudulent Transfer and Alter Ego Actions. Dkt. 134.

Also on May 10, 2016, Graybox and Scher filed a third party complaint seeking indemnification or contribution from six third party defendants: Weston Capital Asset Management, LLC ("WCAM"); Weston Capital Management, LLC ("WCM"); Société Générale Private Banking Suisse, SA; Swiss Financial Services (Bahamas) Ltd.; Albert Hallac; Jeffrey Hallac; and Keith Wellner. Dkt. 133. This third party complaint was amended on November 3, 2016. See dkt. 278.

On September 12, 2016, Wimbledon filed a second amended complaint against Bergstein, Swartz, Grunfeld, and Jam. Dkt. 197 ("SAC").

On November 9, 2016, Bergstein's counsel was notified that a grand jury in the Southern District of New York had returned an indictment against Bergstein. Id. at 1; dkt. 286-1 ¶ 2. On December 7, 2016, Graybox and Bergstein filed the instant motion to stay this action pending the resolution of that related criminal action. Dkt. 286 ("Motion").

On December 15, 2016, Wellner filed an opposition to the instant motion in which he submits to a stay of the underlying action against Bergstein and Graybox but argues that the third party complaint against him should be dismissed without prejudice in lieu of an indefinite stay. Dkt. 287 ("Wellner Opp'n").

On December 15, 2016, Swartz filed a response to the instant motion in which he takes no position regarding whether Wimbledon's claims against Graybox and Bergstein should be stayed but opposes a stay to the extent it would apply to a dispositive motion

---

[1] Unless otherwise indicated this brief refers to documents filed in Case No. 2:15-cv-06633-CAS-AJW in this Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

STAYED
"O"

| Case No. | CV15-6633-CAS(AJWx); C/W: CV16-2287-CAS(AJWx) | Date | January 9, 2017 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC, ET AL. | | |

filed by him regarding Wimbledon's claims. Dkt. 288 ("Swartz Opp'n"). Swartz intends to file a motion for partial summary judgment seeking dismissal of Wimbledon's alter ego claim against him and Swartz asserts that Bergstein's testimony will not be necessary for the Court to resolve his future motion for partial summary judgment. Id.

On December 15, 2016, WCAM and WCM (collectively, "Weston defendants"), along with Albert Hallac and Jeffrey Hallac (collectively, "Hallac defendants") filed a partial opposition to the motion to stay. Dkt. 289 ("Weston/Hallac Opp'n"). The Weston and Hallac defendants submit to a stay of the underlying action by Wimbledon against Bergstein and Graybox, but they argue that the Court should dismiss claims against the Weston and Hallac defendants without prejudice so that they may avoid "the burden of this proceeding hanging over them." Id. at 2.

On December 15, 2016, Wimbledon filed an opposition to the instant motion. Dkt. 290 ("Wimbledon Opp'n").

On December 15, 2016, IA and Jam filed a notice of non-opposition to the motion to stay. Dkt. 292.

On December 23, 2016, Bergstein and Graybox filed a reply in support of their motion for a stay. Dkt. 293.

On January 6, 2017, after the close of business, the United States moved to intervene in this action and to stay this matter in all aspects beyond the exchange of document discovery until the conclusion of the criminal case. Dkt. 295.

## II.  BACKGROUND

The SAC alleges the following facts: Wimbledon was founded on or about December 18, 1995, and is a pooled investment hedge fund. SAC ¶ 10. SIP was formed by defendants Bergstein, Grunfeld, Swartz, and Jam as a Texas Corporation on December 2, 2010. Id. ¶¶ 13–14. According to Wimbledon, these defendants created SIP to shield themselves from personal liability and operated SIP as if they and SIP were a single economic entity, i.e., they made no distinction between their personal finances and the finances of SIP. Id. ¶¶ 14–15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA           STAYED
                                           "O"

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-6633-CAS(AJWx); C/W: CV16-2287-CAS(AJWx) | Date | January 9, 2017 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC, ET AL. | | |

On or about November 14, 2011, Wimbledon and SIP entered into a Note Purchase Agreement ("NPA"). Id. ¶ 18. Pursuant to this agreement, Wimbledon had the right to purchase up to $25 million worth of reference notes issued by SIP (the "SIP Notes"). Id. According to Wimbledon, the NPA contained numerous provisions indicating that SIP was a legitimate business and that the SIP Notes were a legitimate investment. Id. ¶ 19.

In November and December 2011, Wimbledon made payments of $12.5 and $5.2 million, respectively, to SIP to purchase SIP Notes. Id. ¶ 20. Wimbledon's November 2011 investment was wired to SIP's bank accounts with Deutsche Bank. Id. ¶ 21. Over the course of the following weeks and months, the Deutsche Bank accounts were virtually depleted through a series of wire transfers to third-party entities controlled by or for the benefit of Bergstein, Grunfeld, Swartz, and Jam. Id. Wimbledon contends that these transfers were entirely inconsistent with the terms of the NPA. Id.

Pursuant to the NPA, Wimbledon was entitled to make redemption requests in certain circumstances requesting repayment of its investment from SIP. See id ¶¶ 19, 38. In August and October of 2012, Wimbledon made redemption requests on SIP. Id. ¶ 38. In January 2013, Wimbledon made a final redemption request on SIP for approximately $4.7 million. Id. SIP ignored all of these redemption requests. Id. On February 4, pursuant to another provision of the NPA, Wimbledon declared the SIP Notes immediately due and payable. Id. ¶ 39. SIP likewise ignored this notice. Id.

On February 8, 2013, the Texas Secretary of State caused SIP's certificate of formation to be forfeited pursuant to Section 171.309 of the Texas Tax Code. Id. ¶ 40. On that same date, Wimbledon sued SIP for breach of contract in New York state court. Id. ¶ 41. A default judgment of $23,051,971.31 plus post-judgment interest, which continues to accrue, was eventually entered in favor of Wimbledon. Id.

Wimbledon now seeks a declaratory judgment holding that defendants Bergstein, Grunfeld, Swartz, and Jam are the alter egos of SIP or that they used SIP as a sham to perpetrate fraud and, as such, may be held jointly and severally liable for SIP's liability arising out of or under the NPA. Id. ¶ 77. Wimbledon also seeks a judgment in the amount of at least $100,000 for the allegedly fraudulent transfer of that amount from SIP to Swartz. Id. ¶ 86.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA         STAYED
                                        "O"

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-6633-CAS(AJWx); C/W: CV16-2287-CAS(AJWx) | Date | January 9, 2017 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) v. GRAYBOX , LLC, ET AL. | | |

On November 7, 2016, a grand jury in the Southern District of New York returned an indictment of Bergstein and Wellner for conspiracy to commit investment advisory fraud and securities fraud, two counts of investment advisor fraud, two counts of securities fraud, conspiracy to commit wire fraud, and wire fraud.  Dkt. 286-1, Ex. A ("Indictment"); see also United States v. David Bergstein, No. 1:16-cr-746-PKC (Nov. 7, 2016 S.D.N.Y), Dkt. 1 ("Criminal Case").  The Indictment alleges that in November 2011, Bergstein along with Wellner and Albert Hallac (the founder of Weston) engaged in a scheme to transfer $17.7 million from Wimbledon's Class TT Portfolio to SIP. Indictment at ¶ 24.  It further alleges that Bergstein and Wellner used Wimbledon's funds to pay back debt owed to another set of Weston investors; and that Bergstein falsely represented the financial health of SIP to Wimbledon's investors in order to induce them into investing.  Id. at ¶¶ 25–27.  The Indictment also claims that Bergstein disbursed SIP assets to Graybox and otherwise used the money invested by Wimbledon for his personal benefit.  Id. ¶¶ 28–29.  Bergstein was arraigned on the Indictment on November 17, 2016. A scheduling conference in the Criminal Case is set for a January 19, 2017.[2]

### III.    LEGAL STANDARD

"The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings."  Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995), cert. denied, 516 U.S. 827 (1995).  Parallel civil and criminal proceedings are unobjectionable under Ninth Circuit precedent unless such proceedings substantially prejudice the rights of the parties involved.  Id.  "The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made 'in light of the particular circumstances and competing interests involved in the case.'"  Id. (quoting Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989)). The party proposing a stay bears the burden of proving that a stay is warranted.  Clinton v. Jones, 520 U.S. 681, 708 (1997).

A district court is vested with the discretion to stay an action based on its inherent authority to control its own docket.  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Although there is no requirement that a court stay a civil action pending the outcome of a

---

[2] Additional background facts are known to the parties and are set forth in the Court's prior orders, see, e.g., dkts. 56, 82, 151.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA     STAYED
"O"

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-6633-CAS(AJWx); C/W: CV16-2287-CAS(AJWx) | Date | January 9, 2017 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC, ET AL. | | |

related criminal proceeding, a court may choose to do so "when the interests of justice seem [ ] to require such action." Keating, 45 F.3d at 324 (quotation marks omitted).

In deciding whether to grant a motion to stay civil proceedings in favor of parallel criminal proceedings, courts in the Ninth Circuit must consider the "extent to which the defendant's [F]ifth [A]mendment rights are implicated." Id. In addition, Keating instructs that courts should consider the following five factors: (1) the interest of the plaintiff in proceeding expeditiously with the litigation, and the possibility that plaintiffs would be prejudiced by a delay; (2) the burden which the proceedings may impose on defendants; (3) the convenience of the court and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the civil and criminal litigations. Id. at 324–25. Thus, while the extent to which a defendant's Fifth Amendment rights are implicated is a "significant factor" to be considered, it is "only one consideration to be weighed against others." Id. Nonetheless, other than cases involving bad faith or malice on the part of the government, "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1375–76 (D.C. Cir. 1980). In such cases, allowing the civil action to proceed may undermine the defendant's Fifth Amendment privilege, expand criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the defense strategy to the prosecution before the criminal trial, or cause other prejudice. Id. at 1376. Accordingly, where the civil proceeding wholly or substantially overlaps with the criminal proceeding, a court may be justified in staying the civil case, deferring civil discovery, or taking other protective measures. Id.

**IV.  DISCUSSION**

  **A.  Bergstein's Fifth Amendment Privilege**

In this case, Bergstein's Fifth Amendment concerns are substantial. Bergstein has been indicted on serious criminal charges: conspiracy to commit investment advisory fraud and securities fraud, two counts of investment advisor fraud, two counts of securities fraud, conspiracy to commit wire fraud, and wire fraud. Criminal proceedings have commenced in a related case, United States v. Bergstein, United States v. David Bergstein, No. 1:16-cr-746-PKC, in the Southern District of New York. Compare

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          STAYED
                                         "O"

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-6633-CAS(AJWx); C/W: CV16-2287-CAS(AJWx) | Date | January 9, 2017 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC, ET AL. | | |

Molinaro, 889 F.2d at 903 ("The case for staying civil proceedings is a far weaker one when no indictment has been returned, and no Fifth Amendment privilege is threatened.") (quotation marks omitted). Moreover, Wimbledon's allegations in its civil complaint overlap significantly with the criminal charges. Both cases rest upon claims that defendants, including Bergstein, engaged in a scheme to fraudulently transfer funds from Wimbledon's Class TT portfolio to SIP and that Bergstein used money invested by Wimbledon for his personal benefit. See SAC ¶¶ 21–37; Indictment ¶¶ 25–30. In addition, both cases rest on claims that Bergstein misrepresented the financial health of SIP. See SAC ¶¶ 47, 71, Indictment ¶¶ 25–28. Because the factual allegations in the two cases substantially overlap, Bergstein and Graybox argue that Bergstein and other defendants will likely assert their Fifth Amendment privilege in this civil action. Motion at 8.

Wimbledon argues that Graybox, a corporate entity that was not indicted, enjoys no Fifth Amendment privilege. Wimbledon Opp'n at 7. Wimbledon also contends that Bergstein has waived his Fifth Amendment privilege because (1) he has already provided sworn testimony, through declarations, in opposition to Wimbledon's preliminary injunction motion; (2) he has submitted substantive responses to Wimbledon's written discovery requests; and (3) he has been deposed by the Securities and Exchange Commission ("SEC") in connection with the SEC's investigation of Weston. Id. at 7–10. Even if Bergstein has not waived his Fifth Amendment privilege, Wimbledon argues that Bergstein's Fifth Amendment interest is "negligible" because he has already provided sworn statements. Id. at 10; IBM Corp. v. Brown, 857 F. Supp. 1384, 1390 (C.D. Cal. 1994) ("Where a defendant already has given partial deposition testimony on substantive issues of the case, the Fifth Amendment privilege is 'negligible' and cannot provide the basis for a stay.").

With respect to Graybox, the law is clear that a corporation has no privilege against compulsory self-incrimination. United States v. Kordel, 397 U.S. 1, 7–8 & n. 9 (1970) (collecting cases). "Nevertheless, the Fifth Amendment rights of every director or officer who may speak on behalf of the corporation are implicated, and thus, the corporation is likely to be greatly prejudiced in its ability to meaningfully defend itself in the civil matter." CFPB v. Glob. Fin. Support, Inc., No. 3:15-cv-02440-GPC-WVG, 2016 WL 2868698, at *3 (S.D. Cal. May 17, 2016). Wimbledon alleges that Bergstein is Graybox's managing member. SAC ¶ 22. Because Bergstein is a "key witness" who will

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA      STAYED
                                    "O"

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-6633-CAS(AJWx); C/W: CV16-2287-CAS(AJWx) | Date | January 9, 2017 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) v. GRAYBOX , LLC, ET AL. | | |

not be able to testify on behalf of Graybox until the conclusion of the criminal case, see Cadence Design Sys. v. Avant!, Inc., No. 5:95-cv-20828-RMW-PVT, 1997 U.S. Dist. LEXIS 24147, at *6 (N.D. Cal. July 22, 1997), Bergstein's assertion of his Fifth Amendment privilege is likely to prejudice Graybox.

With respect to Bergstein, the Court cannot conclude that he has waived his Fifth Amendment privilege in this case. Bergstein's deposition before the SEC does not waive his privilege because "[i]t is settled that a waiver of the Fifth Amendment privilege is limited to the particular proceeding in which the waiver occurs." United States v. Licavoli, 604 F.2d 613, 623 (9th Cir. 1979) ("[V]oluntary testimony before a grand jury does not waive the privilege against self-incrimination at trial."). The Court further declines to find that Bergstein's written testimony in this case effectuates a blanket waiver of his Fifth Amendment privilege because Wimbledon has not shown that Bergstein's testimony was incriminating or would result in distortion of the facts. See Klein v. Harris, 667 F.2d 274, 287–88 (2d Cir. 1981) (a court may infer a testimonial waiver if (1) the witness' prior testimony has created a significant danger of distortion and (2) whether the prior testimony was testimonial and incriminating); Chevron U.S.A. Inc. v. M & M Petroleum Servs., Inc., No. 8:07-cv-818-DOC-AN, 2008 WL 5423820, at *3 (C.D. Cal. Dec. 30, 2008) (declining to find a waiver of the Fifth Amendment privilege because the moving party failed to establish that prior statements by the party seeking to invoke the privilege constituted incriminating testimonial statements); Nursing Home Pension Fund v. Oracle Corp., No. 3:01-cv-00988-MJJ, 2007 WL 1880381, at *12 (N.D. Cal. June 29, 2007) ("[A] 'testimonial waiver' is not to be lightly inferred, and the courts accordingly indulge every reasonable presumption against finding a testimonial waiver." (quoting Klein, 667 F.2d at 287)); United States v. Trejo-Zambrano, 582 F.2d 460, 464 (9th Cir. 1978) ("A waiver of the Fifth Amendment privilege at one state of a proceeding is not a waiver of that right for other stages."). In addition, in the cases that Wimbledon cites in which courts have declined to grant a stay because of "negligible" Fifth Amendment interests, those courts relied on the fact that the parties asserting the privilege had already been deposed in those proceedings. See Multiven, Inc. v. Cisco Sys., Inc., 725 F. Supp. 2d 887, 897 (N.D. Cal. 2010) ("Adekeye has already voluntarily submitted declarations in support of Multiven's briefs regarding the parties' cross-motions for summary judgment and *has been deposed extensively, including fourteen hours of deposition testimony* that he voluntarily provided in Vancouver, Canada prior to his arrest." (emphasis added)); FTC v. J.K. Publications, Inc., 99 F. Supp. 2d 1176, 1199

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                     STAYED
                                                    "O"

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-6633-CAS(AJWx); C/W: CV16-2287-CAS(AJWx) | Date | January 9, 2017 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) v. GRAYBOX , LLC, ET AL. | | |

(C.D. Cal. 2000) ("As the record shows, Ken Taves *has testified at a deposition* and submitted sworn statements in prior proceedings *in this case*. Where a defendant *already has provided deposition testimony on substantive issues* of the civil case, any burden on that defendant's Fifth Amendment privilege is 'negligible.'" (emphases added)); Brown, 857 F. Supp. at 1390 ("Individual defendants Romoff and Dhingra *already have testified at deposition* and therefore have no remaining Fifth Amendment privilege to assert." (emphasis added)). Bergstein has not yet been deposed in the instant case. Thus, Bergstein's Fifth Amendment concerns are significant, and this factor of the analysis strongly supports a stay.

### B.    Other Keating Factors

The remaining Keating factors together weigh in favor of Bergstein. First, Wimbledon argues that it will suffer substantial prejudice if a stay is granted because a stay will increase the risk that defendants, particularly IA and Jam, will dissipate assets, and thereby impede Wimbledon's ability to recover the money stolen from it. Wimbledon Opp'n at 13–14. Wimbledon also argues that a stay is particularly inappropriate because it is a victim of fraud, and it lacks the rights of attachment and other remedies to tie up assets pending the outcome of litigation. Id. at 15. While is it true that Wimbledon has an interest in mitigating the risk of depletion of assets, see Brown, 857 F. Supp. at 1391, this Court granted Wimbledon's motion for a preliminary injunction and enjoined Graybox from transferring $2,412,000 in settlement funds to be received by Graybox. Dkt. 70. Wimbledon has not sought a preliminary injunction to freeze the assets of IA, Jam, or any of the other parties to this case. In addition, Wimbledon has not alleged that defendants have attempted to dissipate assets upon the filing of the instant action. The Court therefore concludes that Wimbledon will not suffer substantial prejudice should the action be stayed.[3]

---

[3] Wimbledon argues that, in the event the Court orders a stay, the Court should require Bergstein and Graybox to post a bond for $23,051,971.31, the amount of the default judgment entered against SIP. Wimbledon Opp'n at 21; see Cadence, 1997 U.S. Dist. LEXIS 24147, at *9 (requiring the defendant who requested a stay to post a $5,000,000 bond as a condition of the stay in order "to protect at least some of any potential recovery by [the plaintiff]."). In Cadence, the court ordered a bond because it had previously *denied* the plaintiff's application for a preliminary injunction. Cadence,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          STAYED
                                         "O"

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-6633-CAS(AJWx); C/W: CV16-2287-CAS(AJWx) | Date | January 9, 2017 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) v. GRAYBOX , LLC, ET AL. | | |

Second, as discussed above, this civil proceeding implicates Bergstein's Fifth Amendment rights to a significant degree, and allowing the civil case to proceed in parallel with the criminal prosecution would effectively force Bergstein to choose between defending himself in the civil case and preserving his Fifth Amendment rights. In addition, Bergstein and Graybox argue that allowing a civil action to proceed against Bergstein risks expanding criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b) and exposing the defense strategy to the prosecution before the criminal trial, and causing other prejudice. Motion at 6. "These are both well-recognized consequences of parallel criminal and civil proceedings that may support a stay or deferral of discovery in cases where delay would not seriously injure the public interest or otherwise cause prejudice." SEC v. Alexander, No. 10-cv-04535-LHK, 2010 WL 5388000, at *5 (N.D. Cal. Dec. 22, 2010). Therefore, the Court finds that permitting this case to proceed "could seriously burden [Bergstein] and prejudice his criminal defense." Id.

Third, the convenience of the court and judicial efficiency is neutral. "[S]taying the case makes efficient use of judicial resources by insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination." Jones v. Conte, No. 3:04-cv-5312-SI, 2005 WL 1287017, at *2 (N.D. Cal. Apr. 19, 2005) (quotation marks omitted); see also Glob. Fin. Support, Inc., 2016 WL 2868698, at *5 ("[A] number of courts have concluded that staying a parallel civil proceeding in its early stages may prove more efficient in the long run."). However, "[a]s a general matter, 'the court [has] an interest in clearing its docket.'" Gen. Elec. Co. v. Liang, No. 2:13-cv-08670-DDP-VBK, 2014 WL 1089264, at *6 (C.D. Cal. Mar. 19, 2014) (quoting Molinaro, 889 F.2d at 903).

---

1997 U.S. Dist. LEXIS 24147, at *9. By contrast, the Court has granted a preliminary injunction and frozen Graybox's assets. Therefore "*at least some* of any potential recovery" is protected. Id. (emphasis added). Moreover, the Court finds that it would be inequitable to hold Graybox and Bergstein responsible for the entirety of the default judgment claimed against SIP, particularly where Wimbledon expressly fears dissipation by *other* parties (namely, IA and Jam). The Court therefore **DENIES** Wimbledon's request for such a bond.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA     STAYED
"O"

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-6633-CAS(AJWx); C/W: CV16-2287-CAS(AJWx) | Date | January 9, 2017 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC, ET AL. | | |

Fourth, Wimbledon argues that its investors have a substantial interest in the expedient resolution of this matter. Wimbledon Opp'n at 20. The Court agrees that the interests of non-party investors in obtaining prompt monetary relief is strong. However, while staying the civil case would certainly delay any recovery by Wimbledon that might be passed along to investors, Wimbledon has not argued that a stay would diminish the likelihood of their eventual recovery. "Thus, although the Court agrees that investors have a significant interest in timely litigation of the civil proceedings, it is not convinced that this interest outweighs the burdens on [Bergstein]." Alexander, 2010 WL 5388000, at *6.

Fifth, the public interest weighs in favor of a stay or is, at most, neutral. On one hand, "the public interest is furthered by a stay because the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant." Jones, 2005 WL 1287017, at *2 (quotation marks omitted); see also SEC v. Nicholas, 569 F. Supp. 2d 1065, 1073 (C.D. Cal. 2008) ("Staying the civil case, which carries only civil sanctions and monetary penalties, is not of an equally pressing nature" as a criminal case that could result in imprisonment of the criminal defendants). On the other hand, "the indirect societal interest in bringing to justice the perpetrators of crimes" may not "take precedence over the direct interest of the victims of crimes to obtain redress for their losses." Brown, 857 F. Supp. at 1391.

On balance, the court concludes that the Keating factors weigh in favor of staying the instant civil matter. Accordingly, the Court **GRANTS** Bergstein and Graybox's motion to stay this action pending the resolution of the criminal case against Bergstein.

### C. Requests for Dismissal and a Partial Stay

Wellner, the Weston defendants, and the Hallac defendants do not oppose a stay but contend that the claims against them should be dismissed without prejudice. See Wellner Opp'n at 4–5; Weston/Hallac Opp'n at 2. Wellner argues that the claims for indemnity and contribution against him depend on the outcome of the underlying action and that he should not be forced to incur additional attorneys' fees as a result of monitoring this action, appearing at status conferences, and filing other documents with the Court. Wellner Opp'n at 4. Similarly, the Weston and Hallac defendants argue that a stay would place them "in limbo for years" and they contend that Bergstein and Graybox would suffer no prejudice from a dismissal because claims against the Weston and Hallac

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA	STAYED
"O"

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-6633-CAS(AJWx); C/W: CV16-2287-CAS(AJWx) | Date | January 9, 2017 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) v. GRAYBOX , LLC, ET AL. | | |

defendants are derivative. Weston/Hallac Opp'n at 4–4. The Court concludes that judicial economy would *not* be served by dismissing Wellner and the Weston and Hallac defendants because—once a stay is lifted—the parties would have to file a third party complaint and responsive pleadings, and complete service, all over again. Moreover, these third party defendants are likely to monitor this action even if they are dismissed without prejudice. Therefore, the Court **DENIES** the requests of Wellner and the Weston and Hallac defendants to dismiss the claims against them.

Swartz opposes a stay to the extent it would apply to a dispositive motion filed by him regarding Wimbledon's claims. Swartz Opp'n at 1. Swartz intends to file a motion for partial summary judgment seeking dismissal of Wimbledon's alter ego claim against him and Swartz asserts that Bergstein's testimony will not be necessary for the Court to resolve his motion for partial summary judgment. Id. at 2. However, Wimbledon has not stated whether it agrees that its alter ego claim against Swartz can be resolved without Bergstein's testimony or without Bergstein and Graybox's further participation in discovery. See Reply at 14. As a result, permitting Swartz to move for partial summary judgment could defeat the purpose of the Court's stay. Accordingly, the Court declines to permit Swartz to file a motion for partial summary judgment while this action is stayed.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** Bergstein and Graybox's motion to stay this action pending the resolution of the Criminal Case against Bergstein. The Court **DENIES** Wimbledon's request that the Court require Bergstein and Graybox to post a bond for $23,051,971.31. The Court **DENIES** the requests of Wellner and the Weston and Hallac defendants to dismiss the claims against them. The Court **DENIES** Swartz's requires that he be permitted to file a motion for partial summary judgment while this action is stayed. The Court **GRANTS** the government's motion to intervene and, given that the Court has stayed this action, **GRANTS** the government's motion to stay this case.[4]

---

[4] See Bureerong v. Uvawas, 167 F.R.D. 83, 87 (C.D. Cal. 1996) (granting the government's motion to intervene and motion to stay discovery in a civil action, pending the resolution of a related criminal case, because "the interests of the Government in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA — STAYED "O"

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV15-6633-CAS(AJWx); C/W: CV16-2287-CAS(AJWx) | Date | January 9, 2017 |
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC, ET AL. | | |

Finally, the Court directs Bergstein and the government to file joint status reports regarding the status of the criminal proceedings in the Southern District of New York every 120 days from the date of the Court's entry of a stay, or upon a resolution of the Criminal Case, whichever first occurs.

IT IS SO ORDERED.

                                                                                                    : 01

Initials of Preparer    IV

protecting its criminal investigation are clearly the paramount concern here. . . . [T]he Government's interest in the unhindered disposition of the extremely complex criminal case looms large over the opposing Defendants' concerns.").